# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| Harold E. Montague, | Case No.: 2:16-cv-01680-JAD-CWH |
| Plaintiff | **Order Granting Defendant's Motions for Summary Judgment and to Seal Exhibit** |
| v. | |
| Jackson, et al. | [ECF Nos. 31, 32] |
| Defendant | |

Pro se plaintiff Harold Montague was forced to take psychotropic medication while housed at Nevada's High Desert State Prison (HDSP). He sues several HDSP personnel under 42 U.S.C. § 1983, alleging that he was denied his right to due process by being forced to take the medication against his will and that the staff administering his medication used excessive force against him.

Dr. Laurie Hoover, one of the remaining defendants,[1] moves for summary judgment on both of Montague's claims, arguing that he lacks evidence to support his claims and that, even if he could show a factual dispute, she is entitled to qualified immunity. She also moves to seal one of her summary-judgment exhibits.[2] I find that compelling reasons exist to seal the detailed medical review panel record, so I grant Hoover's motion for that relief. And because Montague doesn't raise any triable issues of fact on either of his claims, I grant Hoover's summary-judgment motion.

---

[1] Hoover is the only defendant to appear in this case. In January, Magistrate Judge Hoffman gave Montague until February 25 to serve Dr. Racoma, ECF No. 29, and a summons was returned executed on February 1. ECF No. 39. To date, Racoma has not responded to Montague's complaint and Montague has not moved for default against him.

[2] ECF No. 32.

## Background

Montague was ordered to receive mental-health treatment during his incarceration with the Nevada Department of Corrections (NDOC). When he refused to take his prescribed psychotropic medication, HDSP medical officials arranged for a Medical Review Panel on Involuntary Psychotropic Medication. According to NDOC administrative regulations, when an inmate is a danger to himself and others, medical staff may recommend forced treatment.[3] In those circumstances, an independent panel is appointed "to review, approve, defer, or disapprove any proposed use of forced medical treatment . . . ."[4] The panel must include a psychiatrist "who is not the treating psychiatrist," the warden (or a designee), a mental health specialist, and any other necessary personnel.[5] In Montague's case, such a panel was convened on April 19, 2016.[6] The panel included psychiatrist Dr. Racoma, psychologist Dr. Hookham, and Correctional Case Worker Stacy Barrett.[7] Montague was present for the hearing.[8] The panel reviewed Montague's medical file and the assessment completed by Dr. Sebastian Ornopia, and let Montague voice his concerns.[9] The panel noted that Montague felt he didn't need medication, but agreed with Dr. Ornopia's assessment and denied Montague's right to refuse the medication.[10]

---

[3] ECF No. 31-1 at 4.
[4] *Id.*
[5] *Id.*
[6] ECF No. 31-2 at 2.
[7] ECF Nos. 31-6 at 3, 33-1 at 3. Again, the parties refer to Drs. Racoma and Hookham only by their last names.
[8] ECF No. 31-6 at 3.
[9] *Id.* at 3–4.
[10] ECF Nos. 31-6 at 4 33-1 at 2–3.

The next day, Dr. Hoover went with medical staff to try to encourage Montague to cooperate and receive the injection of psychotropic medication voluntarily.[11] Montague refused to speak to Hoover or allow HDSP staff to inject him.[12] So, a CERT team[13] placed Montague face-down on a mattress while a nurse injected the medication.[14] Montague didn't appear injured and didn't ask for medical assistance after he was restrained.[15]

In his first-amended complaint, Montague sued Mr. Jackson, Dr. Racoma, and Dr. Hoover—he does not provide their first names, and Hoover's summary-judgment briefing refers to everyone except Hoover by last name only.[16] After screening, only Montague's Eighth Amendment excessive-force and Fourteenth Amendment due-process claims against Drs. Hoover and Racoma remain.[17] He contends that there was no hearing, so the administration of medication against his will violated his due-process rights, and that Dr. Hoover, acting on Dr. Racoma's orders, told the CERT team to beat him up.[18] Dr. Hoover moves for summary judgment on both claims.[19]

---

[11] ECF No. 31-4 at 4.
[12] *Id.* at 4–5.
[13] Neither party explains what "CERT" stands for and Montague's complaint uses the abbreviation "SERT" to describe this team.
[14] ECF No. 31-4 at 5.
[15] *Id.*
[16] ECF No. 6.
[17] ECF No. 9.
[18] ECF No. 6.
[19] ECF No. 31.

3

**Analysis**

**A.    Summary-judgment standard**

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[20] When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[21] If reasonable minds could differ on material facts, summary judgment is not appropriate and the case must proceed to trial.[22]

If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[23] "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."[24]

**B.    Montague does not show a genuine dispute of fact about whether the force used against him was excessive.**

Montague's first claim for relief alleges that excessive force was used against him in violation of the Eighth Amendment. He admits that Dr. Hoover did not use force herself, but contends that she directed the medication be given by force and allowed the CERT team to use force against him.[25] "[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and

---

[20] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).
[21] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).
[22] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).
[23] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.
[24] *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018).
[25] ECF No. 40 at 5.

4

unusual punishment forbidden by the Eighth Amendment."[26] In the prison context, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."[27] In *Whitley v. Albers*, the Supreme Court articulated five factors for a court to consider when determining whether officers acted maliciously: (1) the need for force, (2) "the relationship between the need and amount of force used," (3) "the extent of the injury inflicted," (4) "the extent of the threat to the safety of staff and inmates," and (5) "any efforts made to temper the severity of a forceful response."[28]

It is not disputed that some force was used to medicate Montague. But Dr. Hoover argues that the force was used only after the panel decided that Montague needed his medication, medical personnel attempted to gain his compliance, and he refused. She contends that the force was necessary to administer the medication and was not excessive. Montague presents no evidence to show that Dr. Hoover used force against him or directed the use of force against him. Moreover, while Montague asserts in his opposition that his "skin was bruised and bleeding and [he] suffered migraines after the fact,"[29] he presents no evidence to support that assertion. Dr. Hoover testified that Montague was not injured and did not request medical attention after the nurse administered his medication.[30]

Montague fails to present evidence to show that the force was maliciously or sadistically applied. Instead, the record shows that the appropriate level of force was used in good faith to ensure that Montague took the medications that he was required to take to ensure his safety and

---

[26] *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quotation omitted).
[27] *Id.* at 6–7.
[28] *Whitley v. Albers*, 475 U.S. 312, 321 (1986).
[29] ECF No. 40 at 5.
[30] ECF No. 31-4 at 5.

the safety of those around him. Not only has Montague failed to show that the force used against him was excessive, he also fails to show that Dr. Hoover participated in the use of force. He asserts—without any supporting evidence—that Dr. Hoover directed the use of force against him, but this conclusory allegation is not enough to show a dispute of material fact. I therefore grant summary judgment in Dr. Hoover's favor on Montague's excessive-force claim.

**C.      Montague's due-process rights were not violated because there was a full hearing before the decision to forcibly medicate him was made.**

Montague's second claim for relief alleges that he was forced to take psychotropic medications against his will in violation of the Fourteenth Amendment's Due Process Clause. Though "the Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest,"[31] certain procedural protections must be afforded to ensure that the decision to medicate an inmate against his will is neither arbitrary nor erroneous.[32] The Supreme Court held in *Washington v. Harper* that notice, the right to be present at an adversary hearing, and the right to present and cross-examine witnesses are sufficient, and a judicial decisionmaker is not required.[33]

Dr. Hoover argues that Montague lacks evidence to show that the hearing he received failed to meet the *Washington* standards. She adds that, even if Montague's due-process rights were violated, he can't show that she personally participated in that violation. Montague does

---

[31] *Washington v. Harper*, 494 U.S. 210, 227 (1990).
[32] *Id.* at 228, 236.
[33] *Id.* at 235.

6

not address either of these arguments head-on. Instead, he insists that he did not need psychotropic medication in the first place.[34]

Montague was present at a hearing the day before the medication was administered. At that hearing, an independent medical review panel reviewed his medical records (including an assessment prepared by Montague's doctor), interviewed Montague, let Montague present concerns, and ultimately concurred with the assessment that Montague needed psychotropic medication. This proceeding was in line with prison regulations that require a panel to review and approve or disapprove proposed forced medical treatment. These regulations, in turn, are consistent with *Washington*'s standards. Despite Montague's protests, his doctor and the independent panel agreed that he needed the medication to avoid being a danger to himself or others.

Montague contends that Hoover "assumed" he needed this medication without properly evaluating his mental state.[35] But the purpose of the independent panel is to prevent forced medication of inmates who don't truly need it. Hoover, as the "last clinician of record" for Montague, was not allowed to participate on the panel.[36] The recommendation to forcibly administer the medication (which appears to have been made by Dr. Ornopia, not Dr. Hoover) was reviewed by the panel and the panel agreed.[37] Montague was given an opportunity to present his case at that hearing and the panel considered his arguments.[38] He insists there was no

---

[34] To the extent that Montague challenges the state-court order that he receive mental-health treatment, I previously dismissed a due-process claim based on this theory because he failed to state a colorable claim based on those allegations. *See* ECF No. 9 at 6.

[35] ECF No. 40 at 9.

[36] ECF No. 31-4 at 4.

[37] ECF No. 31-6 at 4.

[38] *Id.* at 5.

hearing, or, if there was one, he was not present at it. But multiple witnesses testified that he was there, and the record of the hearing notes the same.[39] Montague therefore fails to show a dispute of material fact as to whether the hearing violated his due-process rights.

Finally, Montague presents no evidence to show that Hoover personally participated in this alleged deprivation of his rights. A defendant is liable under § 1983 "only upon a showing of personal participation by the defendant."[40] "A person deprives another 'of a constitutional right, within the meaning of section 1983 if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains].'"[41] There is no evidence that Hoover personally participated in the hearing or the policies that dictate how the hearing was conducted and Montague presents none. In fact, he makes no reference to Hoover in this count of his first-amended complaint. Without a showing that Hoover personally participated in the alleged deprivation, Montague's due-process claim against Dr. Hoover fails. I therefore grant summary judgment in Hoover's favor on Montague's due-process claim, too.

**Conclusion**

IT IS THEREFORE ORDERED that Hoover's motion for summary judgment **[ECF No. 31] is GRANTED.** And with no just reason for delay, the Clerk of Court is directed to ENTER FINAL JUDGMENT under FRCP 54(b) in favor of Dr. Hoover

---

[39] ECF Nos. 31-4 at 4; 31-6 at 4 (Barrett's declaration describes the hearing and states that the panel "interviewed Plaintiff Montague and took into consideration any concerns he presented"); ECF No. 31-2 at 2 (the case note for the hearing states that Montague "met with the involuntary medication panel" on April 19); ECF No. 33-1 (the panel's record notes that its decision was made "after hearing the information presented by the inmate and Mental Health staff").

[40] *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

[41] *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1991) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)) (emphasis in *Leer* omitted).

8

IT IS FURTHER ORDERED that Hoover's motion to seal the medical review panel's records **[ECF No. 32] is GRANTED.** The Clerk of Court is directed to **MAINTAIN the seal on ECF No. 33.**

This order resolves all claims against the only participating defendant. In light of this, Montague has until July 13, 2019, to commence default proceedings against Dr. Racoma. Failure to do so will result in the remainder of this case being dismissed without additional notice.

Dated: June 13, 2019

_____
U.S. District Judge Jennifer A. Dorsey